**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**ERIC LOUIS HATTISON** **PLAINTIFF**

**V.** **CASE NO. 4:25-CV-01073 LPR-JTK**

**SOCIAL SECURITY ADMINISTRATION** **DEFENDANT**

## RECOMMENDED DISPOSITION

### I. Procedures for filing Objections:

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

### II. Introduction:

Plaintiff, Eric Louis Hattison ("Hattison"), filed an application for supplemental security income on April 10, 2023. (Tr. at 17). In the application, he alleged that his disability began on March 15, 2023. *Id*. The application was denied

initially and upon reconsideration. *Id*. After conducting a hearing, an Administrative Law Judge ("ALJ") found that Hattison was not disabled. (Tr. at 17-28). The Appeals Council denied Hattison's request for review of the decision. (Tr. at 1-6). The ALJ's decision now stands as the final decision of the Commissioner, and Hattison has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

## III. **The Commissioner's Decision**:

Hattison was fifty years old as of the filing date of his application and has past relevant work as a cook's helper and a line server. (Tr. at 38, 52, 149).

The ALJ determined that Hattison has not engaged in substantial gainful activity since April 10, 2023, the application date.[1] (Tr. at 19). The ALJ found, at Step Two, that Hattison has the following severe impairments: left ankle status post tibiotalar arthrosis with hardware removal, right hip mild degenerative joint diseases with labral tear and cam deformity, sacroiliitis and moderate lumbar degenerative disc disease and spondylosis. *Id*.

---

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

The ALJ determined that Hattison did not have an impairment or combination of impairments that met or medically equaled a Listed Impairment.[2] (Tr. at 21-22). Next, the ALJ found that Hattison had the residual functional capacity ("RFC") to perform work at the light exertional level as defined in 20 C.F.R. § 416.967(b), with the following limitations: (1) cannot climb ladders, ropes, or scaffolds; (2) can occasionally climb ramps and stairs; (3) can occasionally stoop, crouch, kneel, and crawl; (4) must avoid concentrated exposure to excessive vibration and hazards, such as unprotected heights and hazardous machinery; and (5) can frequently use left lower extremity for foot control operations. (Tr. at 22).

The ALJ found that Hattison is capable of performing past relevant work as a prep cook and line server. In addition, at Step Five, relying upon testimony from a vocational expert ("VE"), the ALJ found that, considering Hattison's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Hattison could perform. (Tr. at 25-27). Therefore, based on Step Four and Step Five determinations, the ALJ concluded that Hattison was not disabled. *Id*.

[2] See 20 C.F.R. Part 404, Subpart P Appendix 1: "Adult Listing of Impairments."

## IV. **<u>Discussion</u>:**

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole, which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B. Hattison's Arguments on Appeal

Hattison contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. He argues that the ALJ did not properly evaluate Hattison's subjective complaints and minimized the evidence, and that the RFC did not incorporate all of his credible limitations.[3]

---

[3] When evaluating a claimant's subjective complaints, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id*. (internal citations omitted).

A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). An ALJ is not required to include limitations in the

The ALJ's opinion was incredibly thorough, detailing evidence of Hattison's severe impairments, his treatment course, his clinical examinations, and his ability to perform daily activities.[4] (Tr. at 17-26). However, Hattison claims that the ALJ erred in describing his lumbar spine and hip conditions as mild, and that he ignored Hattison's femoroacetabular impingement ("FAI") of his hip. This is unavailing. The ALJ observed that some objective imaging showed mild conditions, but he also noted findings of "severe bilateral facet arthropathy," and "multiple degenerative changes in the lumbar spine" and right hip "cam deformity" (virtually the same diagnosis as FAI).[5] (Tr. at 23). Indeed, the ALJ found as a severe impairment "moderate lumbar degenerative disc disease." (Tr. at 22). The ALJ properly acknowledged that Hattison had more than mild diagnoses, finding several impairments to be severe at Step Two.[6]

---

RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

[4] I have reviewed the entire record and the briefs, and I adopt the ALJ's recitation of Hattison's medical history, with clarifications discussed below.

[5] "Cam deformities are due to loss of the sphericity (round shape) of this femoral head. As a result, the labrum can become 'pinched' between the bone of the socket and the bone of the ball and is referred to as femoroacetabular impingement or FAI." https://manhattansportsdoc.com/cam-deformity-femoral-head-cam-lesion-hip-impingement-new-york/.

[6] A diagnosis alone does not infer disability; there must be a functional loss establishing the inability to engage in substantial gainful activity. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).

Hattision also contends that the ALJ incorrectly labeled Hattison's treatment as conservative. Actually, the ALJ detailed the various treatment protocols, like pain medications, pain management injections, nerve blocks, and radiofrequency ablation. (Tr. at 24, 43, 47, 559-577). The ALJ noted that some treatments were ineffective, while others eased his pain and Hattison's conditions improved. (Tr. at 23-25). But the ALJ also correctly pointed out that Hattison declined recommended surgery in 2020, and he scheduled ankle surgery for after the hearing date (and provided no updated records about that surgery). (Tr. at 23-25, 613). Moreover, Hattison was encouraged to do home exercises and, at numerous doctors' visits, to continue activities as tolerated.[7] (Tr. at 23-25, 404, 590). The ALJ's considered Hattison's treatment and response to treatment in full, discussing facts both for and against Hattison's position. I find no error.

Hattison also avers that the ALJ overestimated Hattison's admitted daily activities. Hattison said he could do things like take his kids to school, fix simple meals, socialize outside the home, drive and ride in a car, do light housework, and

---

[7] The need for only conservative treatment contradicts allegations of disabling conditions. *Thomas v. Barnhart*, 130 Fed. Appx. 62, 63 (8th Cir. 2005); *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993). A medical provider's encouragement for a claimant to exercise constitutes evidence in support of an ALJ's findings. *See Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009).

shop in stores.[8] (Tr. at 50-51, 223-226). He said that he needed breaks to do these things and that his kids helped out at home; he also said he could only stand for 30 minutes and lift no more than 5 pounds and the ALJ acknowledged this. (Tr. at 22). Even with limitations in how he performed daily activities, Hattison's level of activity undercuts his allegations that orthopedic conditions were totally disabling. The ALJ also pointed out that several clinical examinations showed normal gait and normal muscle strength, which is in line with the activities that Hattison said he could perform. (Tr. at 23-24).

The ALJ discussed the state-agency medical expert's opinions that Hattison could perform light work with postural limitations.[9] He found them partially persuasive, because the record demonstrated that Hattison was more limited, and so the ALJ added additional postural restrictions in the RFC (Tr. at 25). He added a limitation on left leg foot controls, giving credit to Hattison's plan for ankle surgery.

---

[8] Such daily activities undermine his claims of disability. *Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015).

[9] The ALJ must "evaluate the persuasiveness of medical opinions by considering whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). However, "[t]he first two factors—supportability and consistency—are the most important." *Id*. (citing 20 C.F.R. § 404.1520c(a)). Pursuant to the regulations, "treating physicians are [no longer] entitled to special deference." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(a)).

(Tr. at 22). The ALJ did not minimize Hattison's impairments and symptoms; rather, he accounted for his problems in the fairly restrictive RFC.[10] The RFC properly incorporated symptoms, objective imaging, treatment course, response to treatment, ability to perform activities, and medical opinions. I find that the RFC was well supported.[11]

## V. **Conclusion**:

There is substantial evidence to support the Commissioner's decision to deny benefits. The finding that Hattison was not disabled within the meaning of the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 27th day of October, 2026.

UNITED STATES MAGISTRATE JUDGE

---

[10] Hattison states that he would be unable to work if the RFC was reduced to sedentary exertional work. (Doc. No. 8 at 19). The evidence in the record, however, supports the RFC for light work.

[11] Hattison's reply brief merely reiterated his initial arguments, and it included only one citation to the record. (Doc. No. 14). The reply brief does not give reason to overturn the ALJ's opinion.